## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| THOMAS C. JOHNSON, | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civ. No. MJM-24-71 |
| v. | * | |
| | * | |
| HOUSE OF LABEIJA LLC, et al., | * | |
| | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Self-represented plaintiff Thomas C. Johnson filed this civil action against defendants House of Labeija LLC, Marcus Henderson, Leonard Re'Mack, and Jeffrey Bryant. Mr. Re'Mack was voluntarily dismissed. This matter is before the Court on motions to dismiss filed by Mr. Henderson and Mr. Bryant. No hearing is necessary to resolve the motions. *See* Loc. R. 105.6 (D. Md. 2025). The motions to dismiss are granted for the reasons stated below, and the matter is dismissed without prejudice.

### I.    FACTUAL BACKGROUND[1]

Self-represented Plaintiff Thomas C. Johnson[2] ("Plaintiff"), a resident of Baltimore, Maryland, filed this civil action alleging a single count of defamation against House of Labeija LLC, and self-represented defendants Marcus Henderson ("Mr. Henderson") and Jeffrey[3] Bryant

---

[1] The following facts are drawn from Plaintiff's Complaint. *See* ECF Nos. 1, 1-1.

[2] When Plaintiff initially filed suit, he did so under the legal name "Thomas C. Johnson." ECF Nos. 1, 34. Since commencing this action, he has legally changed his name to Thomas C. Johnson-La'Beija. ECF Nos. 34, 34-1, 34-2.

[3] Throughout the filings, Mr. Bryant's name is spelled both "Jeffrey" and "Jeffery." Because Mr. Bryant himself signed his Motion to Dismiss as "Jeffrey" Bryant, this memorandum adopts Defendant's spelling. ECF No. 39 at 2.

("Mr. Bryant"), both residents of New York. *Id.* at 3–4.[4] The allegations contained in Plaintiff's civil complaint (ECF No. 1) and supplement (ECF No. 1-1) are summarized as follows:

The House of LaBeija was established in the 1970s as a ballroom space for transgender-identifying people "of all races and nationalities" and was "in direct protest to the transgender scene that catered mostly to White transgender individuals." ECF No. 1-1 at 3. The House of LaBeija expanded to include "all members of the LGBTQIA+ community." *Id.*

On or around January 6, 2023, Leonard Re'Mack, also known as "Lyric La'Beija," an actor for the House of LaBeija Inc., posted a defamatory and slanderous document containing false information in "various Facebook ballroom groups." ECF No. 1 at 4; ECF No. 1-1 at 2; *see also* ECF No. 1-2 at 2 (Pl. Not. of Termination by House of LaBeija). The document, styled as a memo with the subject line "Notice Of Termination in Violation of Leadership," was addressed to "The Ballroom Community" from "The Royal House of LaBeija™." ECF No. 1-2 at 2. The memo listed eight bullet points detailing alleged "infractions" by Plaintiff since 2018, including: (1) Plaintiff's falsification of documents leading to the meritless suspension of a ballroom leader; (2) causing embarrassment at a ballroom awards event; (3) threatening to cause a "catastrophic 'stunt'"; (4) failing to show up for a member whom Plaintiff said he would help attend a ballroom event; (5) partaking in acts of nepotism to "cause unnecessary rifts amongst members"; (6) posting negatively on social media about members and leaders; (7) making "new recruits, members, and leaders" apprehensive of retaliatory acts by Plaintiff if they speak out against Plaintiff; and (8) "stir[ring] up controversy" by affiliating himself with ex-members on social media. ECF No. 1-2 at 2. The memo, which was signed only by "Lyric La'Beija" and had a header with the LaBeija

---

[4] The Complaint names a third Defendant, Leonard Re'Mack, a resident of Miami, Florida, but Plaintiff voluntarily dismissed Mr. Re'Mack from the action in December 2025. ECF Nos. 31, 35.

logo, referred to Plaintiff as demonstrating "narcissistic, deceptive, and manipulative behavior" and barred Plaintiff from using the name LaBeija "for any personal or professional use." *Id.* The memo was then "shared, screenshotted, and sent to [Plaintiff] by various members of the LGBTQIA+ community." ECF No. 1-1 at 2. The dissemination of the memo was an "effort to tarnish [Plaintiff's] stella[r] reputation with the community." ECF No. 1-1 at 2.

Following publication of the memo to Facebook, Mr. Henderson and Mr. Re'Mack spoke with the promoter of "the Dorian Cory Awards Ball," a ballroom event in Philadelphia, Pennsylvania and "slandered" Plaintiff when they threatened to "use . . . financial influence" and "boycott the event/ball" if Plaintiff were permitted to judge the event as planned. *Id.* at 2. Mr. Henderson and Mr. Re'Mack both made additional defamatory statements to the promoter of the ballroom event and "published the . . . def[]amatory memo," resulting in Plaintiff's removal as a judge of the event "without notice." *Id.* at 2–3. Plaintiff did not learn he would not be judging the event until he arrived having spent "money on travel, lodging, and [a] very expensive outfit." *Id.*

The "def[a]mation and slander continued" later that year when, in September 2023, Plaintiff was invited to judge a different ball called "Back2Basics" in Newark, New Jersey. *Id.* at 3. After Plaintiff judged the event, "various members" of the House of LaBeija, including Mr. Re'Mack, took to an internet broadcast outlet to "continue their slanderous rants." *Id.* On air, when asked about Plaintiff being removed from the House of LaBeija, Mr. Re'Mack stated that the issue was a "legal matter," which damaged Plaintiff's reputation by suggesting he had "done something criminal or committed a [t]ort." *Id.*

In addition to the defamation impacting Plaintiff's character, the contents of the memo "derail [Plaintiff's] work in the community," as he is a "father" in the House of LaBeija community and, in addition to assisting with the ballroom scene, helped House of LaBeija members "secure[]

3

employment, food, and shelter[;] provided counseling[;] and enrolled or assisted members in furthering their education." *Id.* at 4. The attacks upon Plaintiff are particularly damaging in the context of the ballroom community, as the community is "worldwide" and "is a judgmental community." *Id.*

Plaintiff seeks "punitive damages, as well as compensatory damages to be determined by the courts." ECF Nos. 1 at 5; 1-1 at 5.

## II.      PROCEDURAL BACKGROUND

Plaintiff filed this single-count civil action against defendants Marcus Henderson, Leonard Re'Mack, and Jeffrey Bryant, on behalf of House of LaBeija, LLC, alleging defamation and slander. ECF No. 1 ("Compl.") at 1–2, 4. Summons as to Mr. Bryant and Mr. Re'Mack were originally returned unexecuted. ECF Nos. 7, 9. Service was effected upon Mr. Henderson on July 2, 2024. ECF No. 8. Plaintiff filed motions for alternative service and for default. ECF Nos. 10, 11, 12. The Court entered default as to Mr. Henderson but did not enter default against Mr. Bryant and Mr. Re'Mack because Plaintiff presented no proof they had been served. ECF No. 13 at 2; ECF No. 14.

Mr. Henderson then moved the Court to vacate the order of default. ECF No. 15. Plaintiff did not respond to Mr. Henderson's motion, and the Court vacated the default on April 25, 2025. ECF No. 16. Mr. Henderson timely moved the Court to dismiss Plaintiff's complaint for failure to state a claim and lack of personal jurisdiction. ECF No. 17. On June 24, 2025, Plaintiff filed a "Response to Motion to Vacate Default Judgement/Summary Judgement," ECF No. 20, even though the Court had already vacated its prior order of default. That same day, Plaintiff filed an interlocutory appeal of this Court's decision to vacate the default. ECF No. 21. The Fourth Circuit dismissed Plaintiff's appeal for lack of jurisdiction on October 20, 2025. ECF Nos. 26, 26-2.

On November 13, 2025, this Court directed Plaintiff to file a response to Mr. Henderson's motion to dismiss, and to show cause why the complaint should not be dismissed as to Mr. Bryant and Mr. Re'Mack. ECF No. 29. On December 1, 2025, Plaintiff filed his response in opposition to Mr. Henderson's motion to dismiss, ECF No. 30, voluntarily dismissed Mr. Re'Mack from the action, ECF No. 31 at 2. Plaintiff did not dismiss Mr. Bryant, however, and alleged Mr. Bryant was evading service. *Id.* at 2–3. Plaintiff filed a "Statement Regarding Service & Notice of Intent to Seek Alternative Service," expressing his intent to file a motion for alternative service as to Mr. Bryant. ECF No. 32. On December 3, 2025, Plaintiff filed a "Statement Regarding Safety Concerns, Related Litigation and the Legal Basis for Reasonable Fear," unaccompanied by any requests for relief. ECF No. 33. On December 20, 2025, the Court approved Plaintiff's dismissal of Mr. Re'Mack and ordered Plaintiff to effect service upon Mr. Bryant by January 26, 2026, while denying his request for alternative service. ECF No. 35 at 4. Plaintiff effected service upon Mr. Bryant on January 7, 2026. ECF Nos. 36, 38. On January 13, 2026, Mr. Bryant filed a motion to dismiss for failure to state a claim and lack of personal jurisdiction. ECF No. 39. Plaintiff promptly filed a response in opposition to Mr. Bryant's motion. ECF No. 41.

Both Mr. Henderson's and Mr. Bryant's motions to Dismiss remain pending before this Court and are ripe for disposition.

### III.    SUBJECT MATTER JURISDICTION

Article III of the United States Constitution limits a federal court's jurisdiction to "cases" or "controversies." U.S. Const. Art. III, § 2. Federal courts are courts of limited jurisdiction and "may not exercise jurisdiction absent a statutory basis." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (citation omitted). Federal courts may only exercise subject-matter jurisdiction where a federal question is presented, 28 U.S.C. § 1331, or where the parties are of

diverse citizenship and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332. If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action. Fed. R. Civ. P. 12(h)(3). Lack of subject-matter jurisdiction may be raised at any time by a litigant or the court itself. *Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884). The plaintiff bears the burden of proving that the court has subject-matter jurisdiction over a case. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

Here, Plaintiff claims that this Court has both federal question and diversity jurisdiction over this matter. ECF No. 1 at 3. As explained below, Plaintiff is incorrect.

Plaintiff's sole cause of action, defamation, is a tort claim based on state law. *See Cannon v. Peck*, 36 F.4th 547, 559 (4th Cir. 2022) (citing *Wells v. Liddy*, 186 F.3d 505, 521 (4th Cir. 1999)). A defamation claim alone does not present a federal question. *See Lowe v. Groton*, Civ. No. JKB-18-3615, 2018 WL 6621502, at *1 (D. Md. Dec. 18, 2018) ("Defamation or libel and slander claims do not invoke the application of a federal statute; they are purely state law claims that lie outside the jurisdiction of this court.").

"If . . . state law creates the cause of action, as in the instant case, . . . federal question jurisdiction depends on whether the plaintiff's demand 'necessarily depends on resolution of a *substantial* question of federal law.'" *Mulcahey v. Columbia Organic Chemicals Co., Inc.*, 29 F.3d 148, 151 (4th Cir. 1994) (quoting *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 28 (1983)) (emphasis added in *Mulcahey*). "[A] case may arise under federal law 'where the vindication of a right under state law necessarily turn[s] on some construction of federal law, . . . but 'only [if] . . . the plaintiff's right to relief *necessarily depends* on a *substantial* question of federal law[.]" *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004) (citations omitted).

> Thus, in the absence of another jurisdictional ground, a defendant
> seeking to remove a case in which state law creates the plaintiff's

6

> cause of action must establish two things: (1) that the plaintiff's right to relief necessarily depends on a question of federal law, and (2) that the question of federal law is substantial. If either of these two elements is lacking, removal is improper and the case should be remanded to state court.

*Id.*

Plaintiff cites two statutes he claims confer jurisdiction: 28 U.S.C. § 4101(1) and "Section 20 of the new Cybercrimes Act." ECF No. 1 at 3; ECF No. 1-1 at 4. First, 28 U.S.C. § 4101 is part of a chapter that prescribes processes for domestic courts assessing foreign defamation judgments. *See* 28 U.S.C. §§ 4101–4105. Specifically, § 4101(1) provides a definition for defamation in the foreign judgment context. 28 U.S.C. § 4101(1). Importantly, however, § 4101(1) does not provide a cause of action, and it does not apply to the instant case because there is no foreign defamation judgment at issue. Plaintiff's right to relief for defamation does not depend upon resolution of any substantial question of federal law. Plaintiff also cites "Section 20 of the new Cybercrimes Act." To begin, it is not clear such a law exists in the United States Code.[5] ECF No. 1-1 at 2. Plaintiff provides no code citation for "Section 20 of the new Cybercrimes Act," and I am not aware of any such federal statute. Ultimately, Plaintiff fails to assert any basis for federal question jurisdiction over this action.

Plaintiff also asserts that this Court has diversity jurisdiction over this case. ECF No. 1 at 3; ECF No. 1-1 at 4. The diversity jurisdiction statute provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States[.]" 28 U.S.C. § 1332(a)(1). The

---

[5] A Google search for "Section 20 of the new Cybercrimes Act" returns results for a 2020 South African law. Based on Plaintiff's description of "Section 20 of the new Cybercrimes Act," it is possible he intended to refer to the "Take it Down Act," which bars the "nonconsensual online publication" of "intimate visual depictions" of minors and adults. S. Res. 146, 119th Cong. (2025) (enacted). Because the Act's purpose is to curb the creation and dissemination of "revenge porn," it is not relevant to the instant case where Plaintiff alleges nothing akin to "revenge porn" in his Complaint. ECF Nos. 1, 1-1.

parties here are completely diverse, as Plaintiff is a Maryland resident and Mr. Henderson and Mr. Bryant do not dispute that they are New York residents. ECF No. 1-1 at 4. However, Plaintiff does not claim any amount in controversy exceeding $75,000. Plaintiff's mere reference to 28 U.S.C. § 1332 as a statute requiring diversity of citizenship between the parties and an amount in controversy exceeding $75,000, ECF No. 1 at 4; ECF No. 1-1 at 4, does not demonstrate that an amount in controversy above that jurisdictional threshold.

To be sure, "[c]ourts generally accept the sum claimed by the plaintiff in good faith as the amount in controversy." *Ministry of Defence of State of Kuwait v. Naffa*, 105 F.4th 154, 159 (4th Cir. 2024) (citing *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 638 (4th Cir. 2010)). But if a plaintiff fails to assert a claim that meets the jurisdictional amount, a court may not speculate as to the plaintiff's intentions and assume that a sufficient amount is in controversy to confer jurisdiction. "The amount in controversy requirement is not a procedural nicety; it is a jurisdictional constraint. And '[c]ourts may not engage in conjecture, speculation, or judicial star gazing to determine jurisdiction.'" *Brennan v. Stevenson,* Civ. No. JKB-15-2931, 2015 WL 7454109, at *6 (D. Md. Nov. 24, 2015) (quoting *Kamau v. Slate*, Civ. No. 4:11-522-RH/CAS, 2013 WL 1883257, at *3 (N.D. Fla. Apr. 4, 2013) (alteration in original)).

Here, Plaintiff completed a field on the pro se civil complaint form under the statement, "[t]he amount in controversy . . . is more than §75,000," but the explanation he provided to support this statement appears entirely unrelated to the value of his claim. ECF No. 1 at 4. Instead of explaining the value of his claim, Plaintiff provides a paragraph citing to two New Jersey state cases noting the general availability of compensatory damages for defamation claims under New Jersey law. *Id.* Plaintiff does not identify or explain any compensatory damages or punitive damages to which he claims entitlement, in any amount. *See Stringfellow v. Dep't of Child. and*

*Fam. Servs.*, Civ. No. KLH-18-1212, 2019 WL 386234, at *3 (W.D. La. Jan. 15, 2019) ("Here, although one of the pre-printed complaint forms utilized by plaintiff stated that the amount in controversy exceeded $75,000, she did not explain the basis for this allegation, as instructed on the form."). The only place in his pleading where Plaintiff directly addresses damages is his allegation that the defendants' defamation resulted in his loss of money spent on "travel, lodging, and [a] very expensive outfit," ECF No. 1-1 at 3, but Plaintiff never specifies any amount of money he lost. And while Plaintiff asserts that the defendants' defamation "derail[s his] work in the community," he does not allege that he earned any income from this work or that he lost any such income as a result of the alleged defamation. *Id.* at 4. In sum, Plaintiffs allegations are insufficient to satisfy the jurisdictional amount in controversy necessary to confer diversity jurisdiction in this Court. *See Hall v. Sprint Co.*, Civ. No. RJC-DCK-3:18-24, 2018 WL 10454639, at *1 (W.D. N.C. Feb. 22, 2018) (finding "[p]laintiff . . . failed to plead facts to support the exercise of the court's diversity jurisdiction" where "[i]n the section regarding amount in controversy" he merely stated several statutory provisions).

Because Plaintiff fails to establish this Court's original jurisdiction over this matter, the case must be dismissed against all defendants.

## IV.    PERSONAL JURISDICTION

Each defendant moves to dismiss this case for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Although this matter is subject to dismissal for lack of subject-matter jurisdiction, it may also be dismissed for lack of personal jurisdiction.

### A. Standard of Review

Once a defendant affirmatively raises a personal jurisdiction challenge by Rule 12(b)(2) motion, "the plaintiff bears the burden of demonstrating personal jurisdiction at every stage

9

following such a challenge.'" *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350 (4th Cir. 2020) (quoting *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016)). "[W]hen . . . the court addresses the question [of personal jurisdiction] on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005); *see also Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989) ("burden [is] on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence"). In that circumstance, "the district court must determine whether the facts proffered by the party asserting jurisdiction—assuming they are true—make out a case of personal jurisdiction over the party challenging jurisdiction." *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019) (citation omitted).

## B. Analysis

Mr. Henderson and Mr. Bryant each move to dismiss this matter for lack of personal jurisdiction. With respect to personal jurisdiction, Mr. Henderson notes he "does not conduct continuous or systematic business in Maryland." ECF No. 17. He further asserts that the action that forms the basis for the Complaint did not arise out of acts within Maryland as required by Maryland's long-arm statute and that the conduct at issue does not establish the minimum contacts necessary "to satisfy due process." *Id.* Mr. Henderson also alleges that he was "not aware the court considered him served" and that the summons raised concerns of "procedural invalidity and misidentification." *Id.* Similarly, Mr. Bryant asserts that the conduct at issue does not establish the minimum contacts with Maryland necessary "to satisfy due process." ECF No. 39.

Plaintiff does not address Mr. Henderson's personal jurisdiction arguments, *see* ECF No. 30, but he does respond to Mr. Bryant's arguments, *see* ECF No. 41. Plaintiff contends that the Court has personal jurisdiction over Mr. Bryant because his "intentional acts" aimed at Plaintiff resulted in "reputational and economic harm" to Plaintiff in Maryland, even if Mr. Bryant was not in Maryland when he committed such acts. *Id.* at 3. Plaintiff asserts that Mr. Bryant "intentionally directed online communications and statements toward Plaintiff with knowledge that the resulting harm would be suffered in Maryland." *Id.* at 3.

Plaintiff's failure to respond to Mr. Henderson's argument that the Court lacks personal jurisdiction over him is a concession. *See Stenlund v. Marriott Int'l, Inc.*, 172 F. Supp. 3d 874, 887 (D. Md. 2016) ("In failing to respond to [defendant's] argument[,] Plaintiff concedes the point."); *Ferdinand-Davenport v. Child.'s Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010) (explaining that a plaintiff "abandon[ed]" her claim when she failed to address an argument put forth in the motion to dismiss in her opposition); *Kissi v. Panzer*, 664 F. Supp. 2d. 120, 123 (D.D.C. 2009) ("Because the plaintiff's opposition fails to address the defendants' arguments, the Court may treat the defendants' motion as conceded."). Even without a concession, Plaintiff still fails to establish this Court's personal jurisdiction over either defendant.

Two types of personal jurisdiction are recognized under the Due Process Clause: general and specific. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 352 (2021). General jurisdiction "extends to any and all claims brought against a defendant." *Id.* at 358 (cleaned up). However, "[o]nly a select set of affiliations with a forum will expose a defendant to such sweeping jurisdiction[,]" such as when the forum is a corporate defendant's "place of incorporation" or "principal place of business." *Id.* (cleaned up). A business's principal place of business is "where a corporation's officers direct, control, and coordinate the corporation's activities . . . [it is] the

corporation's 'nerve center.'" *Hertz Corp. v. Friend,* 559 U.S. 77, 92–93 (2010). A forum has general jurisdiction over a defendant when the defendant's contacts with the forum state are so "continuous and systematic" to render the defendant "at home" in the forum state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 918–19 (2011). It is clear that neither defendant is "at home" in Maryland and that this Court lacks general jurisdiction over either defendant.

Specific jurisdiction "covers defendants less intimately connected with a [forum] State, but only as to a narrower class of claims." *Ford Motor*, 592 U.S. at 359. "[T]he constitutional touchstone" for specific jurisdiction is "whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). That is, a defendant subject to specific personal jurisdiction "must take some act by which it purposefully avails itself of the privilege of conducting activities within the forum State." *Ford Motor*, 592 U.S. at 359 (cleaned up). Such a defendant's contacts with the forum "must show that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there." *Id.* at 359 (alterations in original) (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)). The Supreme Court has held that a defendant may be subject to personal jurisdiction where it has "established a substantial and continuing relationship" with the forum state. *Burger King*, 471 U.S. at 487.

Additionally, "[t]he plaintiff's claims . . . 'must arise out of or relate to the defendant's contacts' with the forum[ ]" in order for the forum to exercise specific jurisdiction of the defendant. *Ford Motor*, 592 U.S. at 359 (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017)). The phrase "arise out of" indicates a causal relation,

while "relate to" "contemplates that some relationships will support jurisdiction without a causal showing." *Ford Motor*, 592 U.S. at 362. Ultimately, a court's exercise of personal jurisdiction "depends on the defendant's having such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'" *Id.* at 358 (quoting *Int'l Shoe*, 326 U.S. at 316–317).

The U.S. Court of Appeals for the Fourth Circuit has reduced "the due process requirements for asserting specific personal jurisdiction" to a three-prong test considering: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *UMG Recordings*, 963 F.3d at 351–52 (citing *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009)).

Regarding purposeful availment, the Fourth Circuit has identified several non-exhaustive factors to be considered, including:

> (1) whether the defendant maintained offices or agents in the State; (2) whether the defendant maintained property in the State; (3) whether the defendant reached into the State to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the defendant made in-person contact with a resident of the State regarding the business relationship; (7) whether the relevant contracts required performance of duties in the State; and (8) the nature, quality, and extent of the parties' communications about the business being transacted.

*Sneha Media & Ent., LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 198–99 (4th Cir. 2018) (citing *Consulting Eng'rs Corp.*, 561 F.3d at 278).

13

Under Federal Rule of Civil Procedure 4(k)(1)(A), a federal court may exercise personal jurisdiction over a defendant in the manner provided by state law. *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 622 (4th Cir. 1997). For a court to exercise personal jurisdiction over a non-resident defendant, "(1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citing *Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001)).

Here, Plaintiff appears to cite to § 6-103(b)(4) of Maryland long-arm statute, *see* ECF No. 1-1 at 4–5, which provides for personal jurisdiction over a person who

> [c]auses tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State[.]

Md. Code. Ann., Cts. & Jud. Proc. § 6-103(b)(4).

While "[s]ubsection (b)(4) extends jurisdiction to certain tortious acts that occur outside of Maryland, . . . it 'require[s] greater contacts tha[n] those necessary to establish jurisdiction under other subsections of Maryland's long-arm statute.'" *Winter v. Pinkins*, Civ. No. JKB-14-2124, 2014 WL 5500393, at *3 (D. Md. Oct. 29, 2014) (quoting *Cong. Bank v. Potomac Educ. Found., Inc.*, 2014 WL 347632, at *5 (D. Md. 2014) (alteration in original)).

Plaintiff fails to establish this Court's personal jurisdiction over Mr. Henderson because he presents no evidence that Mr. Henderson engages in business or any other type of "persistent course of conduct in [Maryland]." Md. Code. Ann., Cts. & Jud. Proc. § 6-103(b)(4). In fact, much less than a "course of conduct," Plaintiff attributes only a single defamatory act to Mr. Henderson:

14

that Mr. Henderson "slandered [him] verbally" before a discrete ballroom event that took place in Pennsylvania. *See* ECF No. 1-1 at 2. Nothing in the Complaint indicates where these comments were made or whether Mr. Henderson conveyed the alleged statements to a third party in person or over the phone or internet. *See* ECF No. 1-1. Absent any suggestion of where Mr. Henderson made the alleged defamatory statement—and, more specifically, absent any suggestion that he made it in Maryland or that it was part of a "course of conduct" aimed at Maryland—the facts alleged in the complaint provide no basis for personal jurisdiction over Mr. Henderson under § 6-103(b)(4). *See Winter*, 2014 WL 5500393, at \*4 (finding "approximately ten harmful web postings" in a year an insufficient "course of conduct" to confer personal jurisdiction under § 6-103(b)(4)); *Dring v. Sullivan*, 423 F. Supp. 2d. 540, 546 (D. Md. 2006) (finding the court lacked personal jurisdiction under § 6-103(b)(4) where alleged defamation of a Maryland resident via e-mail originated from the non-resident defendant merely sitting "at a computer in New Jersey.").

Even if Plaintiff could satisfy the requirements of Maryland's long-arm statute, the Court would still lack personal jurisdiction as proceeding with Mr. Henderson as a non-resident defendant before this Court would violate due process. Personal jurisdiction over a non-resident defendant is constitutionally permissible where the defendant has "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash., Off. of Unempl. Comp. & Placement*, 326 U.S. 310, 316 (1945) (citation omitted). Mr. Henderson correctly asserts that Plaintiff's allegations fail to show such sufficient "minimum contacts," and, therefore, haling him into this forum would violate due process. ECF No. 17 at 2; *see also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (explaining that in evaluating personal jurisdiction, courts must consider whether "the defendant's conduct and connection with the forum state are such that

15

he should reasonably anticipate being haled into court there"). Thus, this Court finds that it lacks personal jurisdiction over Mr. Henderson, and the claims against him must be dismissed.

As to Mr. Bryant, Plaintiff does not actually directly attribute any of the allegations of defamation he makes to Mr. Bryant. While he refers to Mr. Bryant as the "owner and operator" of House of LaBeija, ECF No. 1-1 at 4, Plaintiff does not mention Mr. Bryant in his allegations about any of the three instances of defamation upon which his defamation complaint is founded. ECF No. 1-1 at 2–3. There is no allegation that Mr. Bryant was involved in Mr. Re'Mack's publication of the allegedly defamatory memo on Facebook or either of the two alleged instances of slander. *Id.* Plaintiff mentions Mr. Bryant in his discussion of the ballroom event in New Jersey but does not attribute any defamatory statements to him. ECF No. 1-1 at 3. Even construing Plaintiff's complaint as attributing the publication of the memo on Facebook to Mr. Bryant based on its LeBeija header, *see* ECF No. 1-2, and Plaintiff's argument that "[d]efendant intentionally directed online communications and statements toward Plaintiff with knowledge that the resulting reputational and economic harm would be suffered in Maryland," ECF No. 41 at 2–3, these contentions do not suffice to establish personal jurisdiction over Mr. Bryant.

The facts in the complaint do not support the proposition that Mr. Bryant's "online communications" demonstrated a "course of conduct" in Maryland. ECF No. 1-2 at 2. To the contrary, even assuming that Mr. Bryant was responsible for the posting of the memo, such an isolated action does not confer specific personal jurisdiction over a non-resident of the forum. *See, e.g.*, *Carefirst*, 334 F.3d at 399 ("'[A] person's action of placing information on the internet' is not sufficient by itself to 'subject[] that person to personal jurisdiction in each State in which the information is accessed.'" (quoting *ALS Scan, Inc. v. Digit. Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002))); *Winter*, 2014 WL 5500393, at *4 (finding that defendant's "limited contacts

16

with Maryland through the internet do not demonstrate a 'persistent course of conduct'" under §

6-103(b)(4) where defendant made ten web postings allegedly attacking plaintiff's character).

Thus, Plaintiff fails to establish any prima facie case for this Court's exercise of personal

jurisdiction over either Mr. Henderson or Mr. Bryant. His complaint may be dismissed for this

additional reason.

## V.    FAILURE TO STATE A CLAIM

Each defendant asserts, in addition this Court's lack of jurisdiction, Plaintiff's failure to

state a claim for relief as grounds for dismissal under Rule 12(b)(6). The Court agrees that Plaintiff

fails to state a plausible claim for relief and this failure provides another reason for dismissal.

### A.  Standard of Review

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is a

defendant's assertion that, even if the facts contained in the complaint are true, the complaint fails

to state a claim upon which relief may be granted. To survive a Rule 12(b)(6) motion to dismiss,

a plaintiff must plead enough factual allegations "to state a claim to relief that is plausible on its

face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the

legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per

curiam). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do." *Twombly*, 550 U.S. at 555 (citation modified). Upon review of a motion to dismiss pursuant

to Rule 12(b)(6), the court accepts all well-pleaded allegations in the complaint as true and

construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *See Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir. 1997).

"[P]ro se filings are 'h[e]ld to less stringent standards than formal pleadings drafted by lawyers[.]'" *Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022) (second alteration in original) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But liberal construction does not mean that a court can "ignore an obvious failure to allege facts setting forth a plausible claim for relief." *Sheehan v. Saoud*, 650 F. App'x 143, 152 (4th Cir. 2016) (citing *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990)). "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678.

## B. Analysis

Mr. Henderson and Mr. Bryant each move to dismiss this case for Plaintiff's failure to state a claim for relief. Mr. Henderson asserts that the Complaint falls short of the "heightened pleading standard for defamation" as it fails to identify any specific false statements he made, instead making "vague references" to "memos." ECF No. 17 at 2 (emphasis removed). Mr. Henderson further asserts that Plaintiff fails to attribute the alleged defamatory language to him as required in Maryland to show defamation. *Id.* He also contends that "statements of opinion or non-verifiable rhetoric" do not give rise to actionable legal claims. *Id.* (emphasis removed). Mr. Bryant's motion to dismiss largely mirrors Mr. Henderson's motion. ECF No. 39. Mr. Bryant argues that Plaintiff does not demonstrate how any statements Mr. Bryant made were "'defamatory per se' under

Maryland law." *Id.* Like Mr. Henderson, Mr. Bryant further asserts that "statements of opinion or non-verifiable rhetoric" do not give rise to actionable legal claims in Maryland. *Id.* (emphasis removed).

Plaintiff opposes both defendants' motions. Plaintiff asserts that Mr. Henderson's motion is "fatally flawed, untimely, legally unsupported, and based on false statements contradicted by the record." *Id.* at 1. Plaintiff avers that he made "detailed factual allegations supporting each claim" in his complaint, and that Mr. Henderson's motion "makes conclusory assertions insufficient to justify dismissal." *Id.* at 4. Plaintiff asserts that Mr. Bryant's Motion to Dismiss raises factual disputes that are inappropriate at the pleading stage. ECF No. 41 at 2. According to Plaintiff, because whether the alleged defamatory statements were defamatory is a "fact-intensive" inquiry, he is entitled to discovery, and that dismissal is inappropriate. *See id.*[6]

Even if this Court had subject-matter jurisdiction over this action and personal jurisdiction over each Defendant, Plaintiff's complaint still fails to state a plausible claim for relief against either Defendant.

---

[6] Plaintiff also raises several issues in his opposition brief that go beyond the scope of Mr. Henderson's motion to dismiss. Specifically, Plaintiff requests that the Court strike Mr. Henderson's motion as "untimely and legally void," that the Court enter default and default judgment against Mr. Henderson, and that the Court impose sanctions upon Mr. Henderson. ECF No. 30 at 7. All of those requests are denied. First, this Court vacated the default as to Mr. Henderson for reasons explained in the Order dated April 25, 2025. ECF No. 16. Therefore, Plaintiff's argument that Mr. Henderson's motion is a "nullity" is mistaken. Plaintiff's assertion that Mr. Henderson's motion is untimely is also misguided. Following its vacatur of the default, this Court directed Mr. Henderson to respond to Plaintiff's Complaint "no later than May 23, 2025." *Id.* at 2 (emphasis removed). Mr. Henderson timely filed a motion to dismiss in lieu of an answer on May 21, 2025. ECF No. 17. Re-entry of a default as to Mr. Henderson would be error because he has asserted defenses by timely motion. *See* Fed. R. Civ. P. 55(a) (requiring entry of default when defendant fails to defend against plaintiff's claims). And Plaintiff has identified no sanctionable conduct by Mr. Henderson. Accordingly, Plaintiff's requests for the Court to strike Mr. Henderson's motion, to enter default and default judgment against Mr. Henderson, and to impose sanctions upon Mr. Henderson are unfounded.

Plaintiff asserts a claim for "def[a]mation and slander." ECF No. 1 at 4; ECF No. 1-1 at 1. In Maryland, defamation encompasses both libel and slander, and the "essential elements are the same." *Publish Am., LLP v. Stern*, 84 A.3d 237, 247 n.16 (Md. App. Ct. 2014) (quoting *Lake Shore Invs. v. Rite Aid Corp.*, 509 A.2d 727, 727 (Md. App. Ct. 1986)). "To establish a prima facie case of defamation . . . the plaintiff must show: (1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm." *Indep. Newspapers, Inc. v. Brodie*, 966 A.2d 432, 448 (Md. 2009) (citation omitted). "Maryland law distinguishes between statements that are defamatory *per se* and those that are defamatory *per quod.*" *Sirpal v. Wang*, Civ. No. WDQ-12-0365, 2013 WL 5234256, at *5 (D. Md. Sep. 16, 2013). "Defamation *per se* is defamation on its face—i.e. the 'words themselves impute the defamatory character.'" *Sullivan v. City of Frederick*, Civ. No. JKB-17-1881, 2018 WL 337759, at *8 (D. Md. Jan. 9, 2018) (quoting *Metromedia, Inc. v. Hillman*, 400 A.2d 1117, 1123 (Md. 1979)). "In the case of defamation per quod, extrinsic facts must be alleged in the complaint to establish the defamatory character of the words or conduct." *Indep. Newspapers*, 966 A.2d at 448 (citing *M & S Furniture Sales Co., Inc. v. Edward J. De Bartolo Corp.*, 241 A.2d 126, 128 (Md. 1968)). "'The standard for establishing harm,' the fourth element of a defamation claim, 'is different depending on whether the statement was defamatory *per se* or defamatory *per quod.*'" *Daniel v. Home Box Off.*, Civ. No. ELH-23-233, 2023 WL 8478867, at *11 (D. Md. Dec. 7, 2023) (quoting *Rorie v. Bd. of Educ. of Charles Cnty.*, 653 F. Supp. 3d 217, 241 (D. Md. 2023) (internal citation omitted)). "Whether an alleged defamatory statement is *per se* or *per quod* is a question of law for the court." *KDSTI Slassie Tewahado Church v. Ghebreamlak*, Civ. No. DKC-2007-0863, 2008 WL 11366449, at *3 (D. Md. July 17, 2008) (citing *Samuels v. Tschechtelin*, 763 A.2d 209, 245 (Md. App. Ct. 2000)). Either

way, "a plaintiff should allege specific defamatory comments including the time, place content, speaker, and listener of the alleged defamatory matter." *Eng. Boiler & Tube, Inc. v. W.C. Rouse & Son, Inc.*, 172 F.3d 862, No. 97-2397, 1999 WL 89125, at *3 (4th Cir. 1999) (per curiam).

Plaintiff generally alleges defamation without indicating whether his claim is *per se* or *per quod*. ECF No. 1 at 4; ECF No. 1-1 at 1. Mr. Henderson argues that Plaintiff's complaint is deficient because it is "vague" and fails to demonstrate that he made any of the statements Plaintiff alleged were defamatory. ECF No. 17 at 2. This Court agrees that the facts alleged in the complaint are inadequate to support a plausible defamation claim.

Plaintiff alleges that Mr. Henderson contacted the promoter of a ballroom event where Plaintiff was scheduled to serve as a judge and attempted to "use . . . financial influence" to "boycott the event/ball" if Plaintiff remained a judge, and that Mr. Henderson and Mr. Re'Mack "slandered [Plaintiff] verbally by informing Mr. Mafeek, by his own admission via Facebook instant messenger and a call that they made some harmful and slanderous allegations verbally." ECF No. 1-1 at 2. These allegations are conclusory and insufficient to plead defamation because they fail to identify, describe, or even suggest any false statement made by Mr. Henderson. The Complaint offers no indication of what Mr. Henderson said, when he said it, or why the statements were false. Contrary to Plaintiff's assertion, his allegations are far from "detailed." ECF No. 30 at 4. Rather, they amount to the type of vague, conclusory, and formulaic use of labels, like "slanderous," lacking any factual support, that is forbidden by federal pleading rules. While pro se pleadings are held to "less stringent standards" that pleadings drafted by attorneys, *Folkes*, 34 F.4th at 272 (citation omitted), and must be construed liberally, the Court cannot "ignore an obvious failure to allege facts setting forth a plausible claim for relief." *Sheehan*, 650 F. App'x at 152 (citing *Weller*, 901 F.2d at 391). Here, without "further factual enhancement," Plaintiff's

allegations fall short of stating a plausible claim for relief. *Iqbal*, 556 U.S. at 678. Thus, Plaintiff's claim against Mr. Henderson is subject to dismissal under Rule 12(b)(6).

Similarly, Plaintiff does not specifically identify or describe any defamatory or false statements that Mr. Bryant made. ECF No. 1-1 at 2. Even assuming or inferring that Mr. Bryant was somehow responsible for the memo posted to Facebook, ECF No. 1-2, the complaint offers no facts to support any reasonable inference that any of the "bullet points" listed in the memo are untrue, apart from the conclusory allegation that they were "untrue," ECF No. 1 at 4; ECF No. 1-1 at 2. As such, Plaintiff's allegations do not extend beyond "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Without factual support, Plaintiff's conclusory allegation of falsity leaves one to speculate as to Plaintiff's entitlement to relief, which is insufficient to state a plausible claim. Without a plausible claim for relief, Plaintiff is not entitled to the discovery he maintains is necessary to resolve the parties' factual disputes.

Thus, in addition to this Court's lack of subject-matter jurisdiction and lack of personal jurisdiction over the defendants, Plaintiff's defamation complaint against Mr. Henderson and Mr. Bryant is also subject to dismissal under Rule 12(b)(6) for failure to state a claim for relief.

## VI.    ORDER

For the foregoing reasons, it is by the United States District Court for the District of Maryland hereby ORDERED that Mr. Henderson's motion to dismiss (ECF No. 17) and Mr. Bryant's motion to dismiss (ECF No. 39) are GRANTED, and Plaintiff's complaint is dismissed without prejudice.  The Clerk SHALL CLOSE this case and SHALL SEND the parties a copy of this Memorandum Opinion and Order.

 3/27/26
Date

_____
Matthew J. Maddox
United States District Judge

22